IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

STEPHANIE STAPLES ASAHAN,   )          CV. NO. 10-00686 DAE-RLP
                            )
            Plaintiff,      )
                            )
        vs.                 )
                            )
UNITED STATES OF AMERICA;   )
DEPARTMENT OF THE ARMY;     )
JOHN MCHUGH, SECRETARY OF   )
THE ARMY; TRIPLER ARMY      )
MEDICAL CENTER, DOES 1-10,  )
INCLUSIVE,                  )
                            )
            Defendants.     )
_____ )

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

On August 3, 2011, the Court heard Defendant United States of America, Defendant Department of the Army, Defendant John McHugh, and Defendant Tripler Army Medical Center's (collectively "Defendants") Motion to Dismiss.  Roman F. Amaguin, Esq., appeared at the hearing on behalf of Plaintiff Stephanie Staples Asahan ("Plaintiff"); Assistant United States Attorney Thomas A. Helper, appeared on behalf of Defendants.  After reviewing the motion and the supporting and opposing memoranda, the Court **GRANTS** Defendant's Motion to Dismiss (Doc. # 13).

The instant action stems out of employment misconduct which allegedly occurred at Schofield Barracks Health Clinic ("Schofield"). ("Compl.," Doc. # 1, ¶ 13.) Plaintiff was an RN SRP Case Manager employed at Schofield between January 2001 until her alleged constructive discharge on April 2, 2010. (Id.)

Plaintiff claims that at the end of April 2009 her husband, during his second deployment in Kuwait, suffered a traumatic brain injury which left him disabled. (Id. ¶ 17.) Upon her husband's return to Hawaii, Plaintiff began to take protective leave pursuant to the Family Medical Leave Act ("FMLA") to care for him. (Id. ¶ 19–20.)

Plaintiff alleges her immediate supervisor LTC Sandra I. Martin ("Martin") and her coworker Sherry Hamrick ("Hamrick") started to harass Plaintiff once she began to take time off pursuant to the FMLA. Martin allegedly issued her three write-ups under circumstances "which were highly suspect." (Id. ¶ 20.) Plaintiff claims that Hamrick began to question the legitimacy of Plaintiff's leaves of absences and that Martin allegedly sanctioned this questioning. (Id. ¶ 21.) This conduct, according to Plaintiff, unreasonably interfered with Plaintiff's ability to work and created a hostile work environment. (Id.)

2

From June 2009 until December 2009, Plaintiff alleges she repeatedly complained to Martin's superiors of the ongoing abuse.  (Id. ¶ 22.)  In response, Plaintiff claims Martin misrepresented to the supervisors that the conflict between Plaintiff and Hamrick was mutual and both had been disciplined.  (Id. ¶ 23.)  On or around December 24, 2009, Plaintiff alleges she found documentation on her desk which demonstrated that Hamrick and Martin had colluded to create the false impression that the workplace was being monitored by Martin.  In actuality, according to Plaintiff, Martin and Hamrick were attempting to coerce Plaintiff in to quitting.  (Id. ¶¶ 24–25.)  When Plaintiff reported this documentation to Martin's superiors, she was arrested and fingerprinted by Schofield Barracks Military Police for "larceny."  (See id. ¶ 28.)  Plaintiff subsequently resigned her position.  (Id. ¶ 30.)

Plaintiff claims she suffered personal injuries, including but not limited to pain and suffering, emotional distress, embarrassment, and psychological injuries.  (Id. ¶ 31.)  Plaintiff alleges in her Complaint one violation of the Federal Tort Claims Act ("FTCA"), claiming that Defendants negligently supervised Martin and Hamrick.  (Id. ¶¶ 32–38.)

On March 4, 2011, Defendants filed the instant Motion to Dismiss. ("Mot.," Doc. # 13.)  Defendants claim that the Court lacks subject matter

jurisdiction to hear the sole claim of the Complaint because it is preempted by the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000 *et seq.*, the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. §§ 701 *et seq.*, and the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 2302 *et seq.*  (<u>Id.</u> at 2.)  On June 10, 2011, Plaintiff filed her Opposition.  ("Opp'n," Doc. # 18.)  On June 20, 2011, Defendants filed their Reply.  ("Reply," Doc. # 20.)

<u>STANDARD OF REVIEW</u>

I.    <u>Motion to Dismiss</u>

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. In a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the initial burden of proving that subject matter jurisdiction exists.  <u>Robinson v. United States</u>, 586 F.3d 683, 685 (9th Cir. 2009); <u>Rattlesnake Coalition v. U.S. E.P.A.</u>, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007).  "In considering the jurisdiction questions, it should be remembered that 'it is a fundamental principle that federal courts are courts of limited jurisdiction.'"  <u>Stock West, Inc. v. Confederated Tribes of the Colville Reservation</u>, 873 F.2d 1221, 1225 (9th Cir. 1989) (quoting <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 374 (1978)).  Upon a motion to dismiss, a party may make a jurisdictional attack that is either facial or factual.

4

Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack occurs when the movant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. By contrast, a factual attack occurs when the movant "disputes the truth of the allegations, that by themselves, would otherwise invoke federal jurisdiction." Id.

In resolving a facial attack on the allegations of the complaint, the court must accept the allegations of the complaint as true. Mason v. Arizona, 260 F. Supp. 2d 807, 815 (D. Ariz. 2003); see also Savage v. Glendale Union High School, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003); White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "Unlike a Rule 12(b)(6) motion, however, the court will not reasonably infer allegations sufficient to support federal subject matter jurisdiction because a plaintiff must affirmatively allege such jurisdiction." Mason, 260 F. Supp. 2d at 815. When subject matter jurisdiction is challenged in a motion to dismiss, the plaintiff has the burden of proving jurisdiction. Kingman Reef Atoll Investments, L.L.C. v. United States, 541 F.3d 1189, 1197 (9th Cir. 2008) (citing Tosco Corp. v. Comtys. for a Better Environment, 236 F.3d 495, 499 (9th Cir. 2001)).

Defendants proffer two primary arguments for why Plaintiff's claim is preempted. First, "all allegations growing out of her federal employment regarding alleged disability discrimination and retaliation are preempted by [Title VII] and the [Rehab Act]." (Mot. at 2.) Second, "[t]o the extent that Plaintiff claims any federal personnel action was taken against her for nondiscriminatory reasons, her FTCA claim is preempted by the [CSRA]." (Id.) The Court finds that neither Title VII nor the Rehab Act preempt Plaintiff's claim, but agrees that the CSRA preempts Plaintiff's claim.

I.    Anti-Discrimination Statutes and Preemption

A.    Title VII

"Title VII . . . prohibits employment discrimination on the basis of race, color, religion, sex, or national origin." Ricci v. DeStefano, 129 S. Ct. 2658, 2672 (2009); see also 42 U.S.C. § 2000e-2. "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." Ricci, 129 S. Ct. at 2672. Recovery under either theory requires a showing that the Plaintiff is a member of a Title VII protected class. See Chuang v. Univ. of Cal. Davis Bd. of Trustees, 225

F.3d 1115, 1123 (9th Cir. 2000) (finding that to pursue a disparate treatment theory, a plaintiff must demonstrate "(1) <u>he belongs to a protected class</u>; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably" (emphasis added)); <u>Lawrence v. Department of Interior</u>, 525 F.3d 916, 921 (9th Cir. 2008) (finding that to pursue a disparate impact theory, a plaintiff must show, <u>inter alia</u>, "that an employment practice selects members of a <u>protected class</u> in a proportion smaller than their percentage in the pool of actual applicants" (emphasis added)).

Title VII also "prohibits employers from discriminating against an employee because that employee 'has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" <u>Ray v. Henderson</u>, 217 F.3d 1234, 1240 (9th Cir. 2000) (quoting 42 U.S.C. § 2000e-3(a)). "To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." <u>Id.</u>; <u>Dawson v. Entek Intern.</u>, 630 F.3d 928, 936 (9th Cir. 2011) ("To establish a prima facie case [of

retaliatory discharge], the employee must show that he engaged in a protected activity, he was subsequently subjected to an adverse employment action, and that a causal link exists between the two.").

In their motion, Defendants baldly assert that "[a]ny claim against the United States, the Army, or any other defendant for 'tort' is really a claim of disability discrimination, retaliation or hostile work environment arising out of [Plaintiff's] federal employment" and is therefore preempted by Title VII. (See Mot. at 9.) The Court disagrees. The Complaint contains no allegation of discrimination on the basis of "race, color, religion, sex, or national origin" as there must be to pursue a Title VII claim. See Ricci, 129 S. Ct. at 2672. Plaintiff's theory is simply that Defendants negligently supervised Martin and Hamrick as they attempted to coerce Plaintiff into quitting for taking leave under the FMLA. To the extent there is any alleged discrimination, it is on the basis of a disability, not "race, color, religion, sex, or national origin."[1] Simply stated, the Complaint is completely devoid of any indication that Plaintiff is pursuing a discrimination claim on the basis of "race, color, religion, sex, or national origin." Without such allegations, the Court cannot conclude that Title VII preempts Plaintiff's claim.

---

[1] Moreover, the discrimination could only relate to the disability of the Plaintiff's husband, not Plaintiff herself. As discussed infra, Plaintiff asserts no facts which suggest she was disabled.

Nor does the Court find, as Defendants suggest, that Title VII's prohibition on retaliation preempts Plaintiff's claim. As noted, to prevail on a Title VII retaliation claim a plaintiff must first demonstrate that he or she engaged in a protected activity. Dawson, 630 F.3d at 936. A protected activity is one in which a plaintiff opposes in some manner "what [is] reasonably perceived as discrimination under the Act." Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir. 1988). In other words, to qualify as protected activity, the Plaintiff must report or oppose activity that could be reasonably perceived as violative of Title VII. See id. ("[T]he opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation."); see also Reece v. Pocatello/Chubbuck Sch. Dist. No. 25, 713 F. Supp. 2d 1222, 1233 (D. Idaho 2010) (same). Here, conceivably, Martin and Hamrick's conduct could be considered retaliation for Plaintiff's complaining to Martin's supervisors. The complaint to Martin's supervisors did not, however, relate to conduct proscribed by Title VII. Instead, Plaintiff complained that Martin and Hamrick harassed Plaintiff for taking leave as prescribed by the FMLA. Plaintiff's Complaint as alleged could not, therefore, sustain a Title VII retaliation claim. Thus, Defendants' claim that Title VII preempts Plaintiff's complaint is not persuasive.

B. <u>Rehab Act</u>

The Court is similarly unpersuaded by Defendants' claim that

Plaintiff's Complaint is preempted by the Rehab Act. Section 504 of the act

provides:

> No otherwise qualified individual with a disability . . . shall, solely by
> reason of her or his disability, be excluded from the participation in,
> be denied the benefits of, or be subjected to discrimination under any
> program or activity receiving Federal financial assistance.

29 U.S.C. § 794. "A plaintiff bringing suit under § 504 must show (1) he is an

individual with a disability; (2) he is otherwise qualified to receive the benefit; (3)

he was denied the benefits of the program solely by reason of his disability; and (4)

the program receives federal financial assistance." <u>Duvall v. County of Kitsap</u>,

260 F.3d 1124, 1135 (9th Cir. 2001); <u>see also</u> <u>O'Guinn v. Lovelock Correctional</u>

<u>Ctr.</u>, 502 F.3d 1056, 1060 (9th Cir. 2007) (same).

An individual is "disabled" within the meaning of the Rehab Act if

that individual "(1) has a physical or mental impairment that substantially limits

one or more of the individual's major life activities; (2) has a record of such an

impairment; or (3) is regarded as having such an impairment." <u>Coons v. Sec'y of</u>

<u>U.S. Dep't of Treasury</u>, 383 F.3d 879, 884 (9th Cir. 2004).

Here, there is simply no indication that Plaintiff was disabled within the meaning of the Rehab Act. There is no allegation that Plaintiff has any sort of physical or mental impairment that limits one or more of the individual's major life activities. Nor is there any indication that she has ever been so impaired or was regarded as being so impaired. Instead, the Complaint alleges her husband was disabled. Defendants have not, however, proffered an argument or submitted case law which suggests that when a plaintiff's spouse is impaired, the plaintiff can also be considered impaired for the purposes of the Rehab Act. Thus, the Court cannot conclude that Plaintiff has alleged she is disabled within the meaning of the Rehab Act. Accordingly, the Court finds that the Rehab Act does not preempt Plaintiffs' Complaint.

In sum, Plaintiff has not here alleged a claim of discrimination under either the Rehab Act or Title VII. Accordingly these statutes do not preempt Plaintiff's Complaint.[2]

---

[2] Plaintiff in Opposition, however, seemingly <u>concedes</u> that both the Rehab Act and Title VII would preempt her Complaint but for the fact that she has alleged a "highly personal violation." Because Plaintiff's nucleus of facts could not give rise to either a Title VII or Rehab Act claim, the Court need not reach these arguments.

II.     CSRA

       In the alternative, Defendants argue that Plaintiff's Complaint is

preempted by the CSRA.  "The CSRA provides a remedial scheme through which

federal employees can challenge their supervisors' 'prohibited personnel

practices.'"  Orsay v. U.S. Dep't of Justice, 289 F.3d 1125, 1128 (9th Cir. 2002)

(quoting 5 U.S.C. § 2302); see also Rivera v. United States, 924 F.2d 948, 951 (9th

Cir. 1991) ("Congress's purpose in enacting the CSRA was to channel grievances

and disputes arising out of government employment into a single system of

administrative procedures and remedies, subject to judicial review.  To permit

FTCA claims to supplant the CSRA's remedial scheme certainly would defeat that

purpose.").  If a claim falls within the scope of the CSRA, federal employees are

preempted from bringing tort claims arising from employment disputes even if no

remedy is available under the CSRA.  Orsay, 289 F.3d at 1128.                    To

determine whether the CSRA preempts a federal employee's claim, a court need

only consider "whether the employee could challenge the action through the

CSRA."  Saul v. United States, 928 F.2d 829, 841 (9th Cir. 1991).  An action is

challengeable under the CSRA if: (1) the action qualifies as a "personnel action"

and (2) the personnel action is prohibited per the CSRA.  See Mangano v. United

States, 529 F.3d 1243, 1247–48 (9th Cir. 2008).

"Personnel action" is defined comprehensively to include any appointment, promotion, disciplinary or corrective action, detail, transfer, reassignment, reinstatement, restoration, reemployment, performance evaluation, pay or benefits decision, mandatory psychiatric examination, or any other significant change in duties, responsibilities, or working conditions. 5 U.S.C. § 2302(a)(2)(A)(i)–(xi). The Ninth Circuit has been clear:

> The definition of "personnel action" is, necessarily, broad. See Saul, 928 F.2d at 834. There are limits to what qualifies as a "personnel action," but the instances are well outside anything that could reasonably be described as a "personnel action." See Orsay, 289 F.3d at 1129 (holding that aiming a loaded weapon does not fit any of the CSRA's definitions of personnel action); Brock v. United States, 64 F.3d 1421, 1424–25 (9th Cir. 1995) (holding the CSRA does not preempt consideration of claims of rape and sexual assault).

Mangano, 529 F.3d at 1247.

"'[P]rohibited personnel practices' [are defined] as any 'personnel action' taken by someone in authority that violates one of twelve enumerated practices." Id. at 1247 (quoting and citing 5 U.S.C. § 2302(b)). The twelve enumerated practices are listed at 5 U.S.C. § 2302(b)(1)–(12). Two of the twelve enumerated practices are particularly relevant for resolution of the instant Motion. Section 2302(b)(8)(A) states that a supervisor may not fail to take "personnel action" with respect to any employee because of the employee's disclosure of

information which the employee or applicant reasonably believes is a violation of any law, rule, or regulation.  See id. § 2302(b)(8)(A).  Section 2302(b)(12) provides that a supervisor may not fail to take action which directly concerns the "merit system principles contained in section 2301 of this title."[3]  Id. § 2302(b)(12).

Mangano illustrates how a Court should conduct a CSRA preemption analysis.  There, the plaintiff alleged that in response for filing a complaint, his superior "began filing various minor formal complaints against him, including that he was late for work, used his telephone for personal calls, and switched on-call duties with other physicians."  Id. at 1245.  The plaintiff also alleged that his

---

[3]  Section 2301 provides that "[f]ederal personnel management should be implemented" consistent with a number of principles which include, inter alia, the following:

> All employees . . . shall receive fair and equitable treatment in all aspects of personnel management . . . .

> All employees should maintain high standards of integrity, conduct, and concern for the public interest . . . .

> Employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards.

5 U.S.C. § 2301(b).

supervisor inappropriately criticized his handling of a patient and provided false testimony against him. Id. Ultimately, the plaintiff claimed, these actions "led to his termination and deprived him of the ability to practice medicine." Id. The plaintiff brought suit against the United States under the FTCA.

The Ninth Circuit first concluded that the conduct of which the plaintiff complained fell "squarely within the definition of a 'personnel action' as a 'significant change in duties, responsibilities or working conditions' under the CSRA." Id. at 1247 (quoting 5 U.S.C. § 2302(b)(8)(A)). Next, the Ninth Circuit found that the "personnel action" was prohibited as it violated of one of the CSRA's twelve enumerated practices. Id. Specifically, the court found that defendant had allegedly taken personnel action against plaintiff because he had "reported unsafe practices" as prohibited by section 2302(b)(8)(A). Id. Accordingly, the plaintiff could have sought redress within the framework of the CSRA and his claim was preempted. Id. at 1248.

Similarly here, the Court finds that Plaintiff's claim is preempted by the CSRA.[4] Plaintiff's theory of liability is that Defendants failed to properly investigate Martin and Hamrick, knew or should have known that Martin and

_____

[4] In her Opposition, Plaintiff did not respond to Defendants' CSRA argument.

15

Hamrick presented a danger to Plaintiff, and allowed Martin and Hamrick to continue as employees without proper supervision which resulted in injury to Plaintiff. (Compl. ¶¶ 34–38.) In other words, Plaintiff claims that Defendants should have implemented some corrective or disciplinary measure to ensure that Plaintiff would not continue to be subjugated to Martin and Hamrick's offensive conduct. The implementation of corrective or disciplinary measures, however, is plainly "personnel action" as defined by the CSRA. See 5 U.S.C. § 2302(a)(2)(A)(i)–(xi) (defining personnel action to include any appointment, promotion, disciplinary or corrective action, detail, transfer, reassignment, reinstatement, restoration, reemployment, performance evaluation, pay or benefits decision, mandatory psychiatric examination, or any other significant change in duties, responsibilities, or working conditions).

Having concluded that the complained of conduct was "personnel action," the next question is whether the "personnel action" was committed in violation of the CSRA's twelve enumerated practices. See Mangano, 529 F.3d at 1247. The Court concludes that it was.

The CSRA prohibits a failure to take personnel action—in this case disciplinary or corrective action—with respect to an employee's disclosure of information which the employee reasonably believes to be in violation of a law,

rule, or regulation.  See 5 U.S.C. § 2302(b)(8)(A).  Here, Plaintiff claims that

Defendants failed to take disciplinary or corrective action once Defendants were

aware that Hamrick and Martin were illegally harassing her for taking leave to

which she was entitled under the FMLA.  (Compl. ¶¶ 34–37.)  This is precisely the

sort of non-conduct that § 2302(b)(8)(A) was intended to protect against.

        The CSRA also prohibits a failure to take personnel action relating to

"the merit system principles contained in section 2301 of this title."  Id.

§ 2302(b)(12).  The merit system, as discussed, provides that personnel

management should be implemented consistent with a number of principles

including "fair and equitable treatment," "high standards of integrity, conduct, and

concern for the public interest," and the retention of employees "on the basis of the

adequacy of their performance."  Id. § 2301(b)(2),(4),(6).  Indeed, the merit system

explicitly states "inadequate performance should be corrected, and employees

should be separated who cannot or will not improve their performance to meet

required standards."  Id. § 2301(b)(6).  Defendants' failure to take corrective action

with respect to Martin and Hamrick's conduct, if true, would plainly violate this

merit system.  By failing to act, Defendants did not correct inadequate performance

or separate employees as required by the CSRA.  Moreover, Defendants' alleged

inaction certainly failed to satisfy the "high standards of integrity, conduct, and

17

concern for the public interest" which resulted in Plaintiff receiving much less than "fair and equitable treatment" when she was allegedly falsely imprisoned and constructively terminated. Thus, in her Complaint, Plaintiff alleges Defendants took personnel action which is prohibited by the CSRA.[5] Accordingly, Plaintiff could have "challenge[d] the action through the CSRA," and Plaintiff's claim against Defendants is preempted. See Saul, 928 F.2d at 841.

Although Plaintiff does not seek recovery from Defendants on the basis of Martin and Hamrick's conduct directly,[6] the Court also wants to be clear

---

[5] The Court notes there are myriad other ways that Defendants' failure to take disciplinary or corrective action could be construed as prohibited personnel action. For instance, Defendants are not permitted to approve any personnel action which discriminates for or against any employee on the basis of marital status as prohibited under any law, rule, or regulation. 5 U.S.C. § 2302(b)(1)(E). Here, the FMLA plainly prohibited Martin and Hamrick from discriminating against a spouse taking leave under the FMLA, and Martin and Hamrick's supervisors seemingly approved of such conduct by taking no action when the complaints were brought to their attention. This conduct is also prohibited by the CSRA. This same result is reached when prohibited personnel action analyses are conducted pursuant to 5 U.S.C. § 2302(b)(2),(4), (5), (9).

[6] The Complaint and Opposition make clear that Plaintiff's theory of liability is that Martin and Hamrick's supervisors engaged in negligent supervision by failing to address Plaintiff's concerns. (See Compl. ¶¶ 34–38; Opp'n at 6 ("[Plaintiff's] claim is grounded in the tort of negligence. Specifically [Martin and Hamrick's] superiors were repeatedly warned of [Martin and Hamrick's] conduct and that [Plaintiff] feared she would be harmed. Yet, the superiors did nothing to address [Plaintiff's] concerns.").) Nothing in the Complaint or Opposition suggests Plaintiff seeks recovery on the basis of Martin and Hamrick's conduct alone.

that even if Plaintiff pursued such a claim, it would also be preempted by the

CSRA.  At best, the conduct of which Plaintiff complains is identical to the

conduct in <u>Mangano</u>.  Plaintiff here complains that Martin and Hamrick harassed

her, lied about her, falsified charges against her and caused her termination in

retaliation for exercising her rights.  The plaintiff in <u>Mangano</u> complained of the

same conduct.  529 F.3d at 1247.  The Ninth Circuit still found that the CSRA

preempted the plaintiff's claims.  <u>Id.</u> at 1248.  This Court would reach the same

result here.

Plaintiff might nonetheless argue that a different result is warranted

here because Martin and Hamrick's conduct resulted in her arrest.  This argument,

however, is not persuasive.  At least one federal court has found that an arrest

stemming from allegedly false reports of theft filed by a supervisor was still

personnel action for which the CSRA provided the exclusive remedy.  Faced with

this factual scenario, the court in <u>Leonard v. Rumsfeld</u>, 146 F. Supp. 2d 1227

(M.D. Ala. 2001) <u>aff'd</u> 29 Fed. Appx. 575 (11th Cir. 2001), held that

> Plaintiff's allegations relate to conduct which bears a direct
> relationship with her employment.  In the view of the court, a
> supervisor's conduct in accusing a subordinate employee of theft from
> the employer is fairly encompassed within the term "corrective

action" and, assuming the accusation was false . . . as plaintiff alleges,
it violates merit principles set forth in the CSRA.

Id. at 1234.

Similarly here, Plaintiff claims to have happened upon documents

which demonstrated that Martin and Hamrick colluded to falsify reports regarding

Plaintiff. (Compl. ¶¶ 24–26.) Plaintiff alleges that "Hamrick and [Martin]

conspired to have Plaintiff falsely arrested and finger printed for 'larceny' even

though they knew that Plaintiff did not take the documents and intended to return

them . . . ." (Id. ¶ 29.) As the Leonard court found, however, accusing an

employee of theft and reporting him or her to the authorities is easily characterized

as "corrective action." Leonard, 146 F. Supp. 2d at 1234. Indeed, calling the

appropriate authorities to investigate possible employee wrongdoing is well within

the scope of employment of a federal supervisor. Accordingly, the Court finds that

any claim stemming directly from Martin and Hamrick's conduct, rather than that

of their supervisors, would also be preempted by the CSRA.[7]

---

[7] The Court notes that the prohibited aspect of the personnel action, however,
would be different. Specifically, the conduct would be prohibited not because it
was allegedly racially motivated as in Leonard, but instead because Hamrick and
Martin were motivated by Plaintiff's complaining to their supervisors in violation
of 5 U.S.C. § 2302(b)(8)(A).

III.    Dismissal without Prejudice

    Pursuant to Rule 15(a)(2), courts should "freely give leave [to amend] when justice so requires."  Further, "requests for leave should be granted with extreme liberality."  Moss v. U.S. Secret Service, 572 F.3d 962, 792 (9th Cir. 2009).  "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by an amendment."  Id.  Any FTCA claim arising from Plaintiff's factual allegations will plainly be preempted by the CSRA for the reasons stated supra.[8]  Plaintiff may, however, be able to allege a cause of action before this Court per the FMLA itself.  See 29 U.S.C. § 2615(a) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.");  Sanders v. City of Newport, --- F.3d ---, Nos., 08-35996, 09-35119, 09-35196, 2011 WL 905998, at * 4 (9th Cir. March 17, 2011).  The Court therefore **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint.  Plaintiff is hereby granted leave to refile her complaint to the extent permitted by law no later than thirty days from the filing of this order.

---

    [8] While Plaintiff could amend her complaint to allege she exhausted her administrative remedies under the CSRA, the proper courts of review would then either be the Court of Federal Claims or an appropriate court of appeals.  See Lindahl v. OPM, 470 U.S. 768, 774 (1985); 28 U.S.C. § 2342.

<u>CONCLUSION</u>

For the reasons stated above, the Court **GRANTS** Defendants'

Motion to Dismiss (Doc. # 13).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 5, 2011.


_____
David Alan Ezra
United States District Judge


<u>Asahan v. United States of America</u>, Cv. No. 10-00686 DAE-RLP; ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS